FILED
2006 Mar-28 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KARIOUS BELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 2:02-cv-2510-LSC-TMP |
| | ) |
| COOPER GREEN HOSPITAL, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This cause is before the court on the special report filed by the defendants on January 6, 2006. As discussed below, the court believes the motion should be granted in favor of the defendants.

Plaintiff filed his complaint on October 11, 2002. Due to the confusion it caused, plaintiff was directed to amend the complaint, which ultimately he succeeded in doing on September 30, 2003. Named as defendants in the amended complaint were Cooper Green Hospital, "Jefferson County Health Staff," and Nurses Spencer, Miller, Pickett, and Gurley.[1] He alleged that these defendants were deliberately indifferent to a serious skin rash he suffered in the latter half of 2001, and, further, that Nurse Spencer improperly prescribed a medicine, benzoyl peroxide, that made his rash worse and resulted in permanent scarring. After some delay, the defendants filed a special report on January 6, 2006, which the court determined should be treated as a motion for summary judgment. By order entered February 15, 2006, a magistrate judge of the court notified the parties that the special report would be treated as a motion for summary judgment and advised the plaintiff

---

[1] Although the complaint named this defendant as Nurse "Girly," the correct spelling of her name is Gurley.

of the provisions and consequences of Rule 56.  Plaintiff filed a response to the motion on March 14, 2006.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless,

credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiff. In July 2001, plaintiff was incarcerated in the Jefferson County Jail in Bessemer when he began to experience burning and itching skin on his face. Medical records from the jail and from Cooper Green Hospital indicate that he first complained to jail officials on July 23, 2001, when he filed a request for medical service, complaining that his face was burning and itching. In response to the request plaintiff was given vitamin A&D ointment. Additionally, plaintiff was seen by Nurse Gurley in the Cooper Green Hospital clinic on July 27, 2001, where he complained that benzoyl peroxide given to him by Nurse Spencer at the jail had cause a dark, severe rash on his face. Nurse Gurley prescribed A&D ointment for two weeks and told plaintiff to return to the clinic if the rash worsened.

By August 20, 2001, plaintiff filed another request for medical service, complaining that the benzoyl peroxide had cause a dark, burning rash on his face. He was seen by a Nurse Cheatham the next day and was given hydrocortisone cream to apply to his face for two weeks. He was instructed to sign up for sick call if the symptoms continued.

On a nursing assessment dated September 11, 2001, performed by Nurse Belcher, no complaints by plaintiff were noted. But on September 18, 2001, plaintiff again filed a request for

medical service, complaining that his face was burning and itching with a rash. A nurse evaluated him on September 19, 2001, and referred him to the physician's assistant for further evaluation. Although there is no indication in the record that plaintiff was seen by a physician's assistant thereafter, he did appear in the Cooper Green Hospital clinic on October 4, 2001, where he was evaluated by two registered nurses for complaints about head pain secondary to being hit in the head. The records of October 4, 2001, make no mention about complaints of a rash or acne.

Two days later, however, on October 6, 2001, plaintiff filed yet another request for medical service, complaining of headaches and soreness from being hit. A nurse who examined plaintiff on October 8, 2001, also noted that he was complaining about "facial skin irritation," for which she ordered hydrocortisone cream. When plaintiff refused the cream, she referred him for evaluation by the physician's assistant. Similarly, a nurse referred plaintiff to the Cooper Green Clinic on October 19, 2001, after she determined that the topical creams being given to plaintiff had not provided relief for his "severe acne." On October 23, 2001, Nurse Harris gave the plaintiff A&D ointment for his dry skin. She gave him A&D ointment again on October 19, 2001.

On November 11, 2001, plaintiff filed a request for medical service, asking for a physical and A&D ointment for his face. The next day, November 12, 2001, Nurse Harris recorded "no skin irritation noted." On November 23, 2001, plaintiff again complained of head pain, a sore arm, and a need for A&D ointment. Plaintiff was seen in the Cooper Green clinic on November 26, 2001, for the head and arm soreness. Nurse Cheatham started plaintiff on a course of A&D ointment and "IBU" on November 28, 2001. That same day, plaintiff was seen again in the Cooper Green clinic for his complaints of head pain and arm soreness, for which Naprosyn and Robaxin were prescribed.

5

Although not clearly revealed in the medical record, it appears plaintiff also was started on tetracycline on November 28, 2001, for two weeks. Medical administration records indicated that tetracycline, as well as topical creams, were provided to plaintiff through late November and most of December 2001. Even after the two-week course of tetracycline ended in mid-December, a new course of tetracycline was started on December 20, 2001.

In January 2002, plaintiff complained that the medication was causing diarrhea, so the treatment with tetracycline was stopped. It was restarted and continued at plaintiff's request in late January 2002.

The undisputed facts described above make clear that plaintiff's Eighth Amendment right to adequate medical care has not been violated. Medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"'[A] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)).  The Eleventh Circuit, in *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000) stated:

> "To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively serious medical need ...one that, if left unattended, pos[es] a substantial risk of serious harm...."  (Internal quotations omitted).

*Taylor*, *Id*. at 1258, *quoting Farmer v. Brennen*, 511 U.S. 825 (1994).

The second part of the inquiry -- whether the response of the defendant amounted to deliberate indifference -- is itself a two-part determination.  A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay "access to medical care" or to interfere "with the treatment once prescribed," *Estelle v. Gamble*, 429 U.S. at 104-05.  *See also Mandel v. Doe*, 888 F.2d at 788.  *See generally Farmer v. Brennan*, 511 U.S. 825, 833-842 (1994).

In this case, plaintiff received almost constant attention for acne and dry facial skin.  Various topical medications were tried, and when they proved inadequate, tetracycline was prescribed for him.  It is very clear that the defendants were not deliberately indifferent to his medical needs.  Consequently, the motion for summary judgment filed by the defendant will be granted, and this action dismissed.  A separate order will be entered.

The Clerk is DIRECTED to mail a copy of the foregoing to the plaintiff.

Done this 28th day of March 2006.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153